**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2570-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KHALIEL ARRINGTON,

     Defendant-Appellant.

_____

Submitted December 16, 2025 – Decided December 29, 2025

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 19-10-2757 and Accusation No. 23-06-0086.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Deputy Chief Assistant Prosecutor, of counsel; Isabella Guida, law student, appearing pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

Defendant Khaliel Arrington appeals from a judgment of conviction entered on September 18, 2023 after he pleaded guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), and a February 2, 2023 order denying his motion to suppress the handgun.[1] We affirm.

We summarize the facts presented in connection with the motion to suppress. On June 19, 2019, at approximately 12:24 p.m., a person was shot on Irvine Turner Boulevard in Newark. Newark Police Officers, including Captain E. Lopez, responded to the location. Witnesses at the scene reported to Captain Lopez that "a silver sport utility vehicle left the scene of the shooting with no last known direction of flight" and "a male wearing all black clothing with a black hoody was last seen fleeing from the location towards Hillside Avenue." Captain Lopez relayed "information of the suspects involved in the shooting via police radio."

_____

[1] Defendant also appeals from a second unrelated judgment of conviction entered the same day after he pleaded guilty to second-degree robbery, N.J.S.A. 2C:15-1(a)(2), as charged in Accusation No. 23-06-0086. Defendant did not brief any arguments relating to that conviction. As a result, any issues relating to that conviction are deemed waived. State v. Huang, 461 N.J. Super. 119, 125 (App. Div. 2018); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026) ("It is, of course, clear that an issue not briefed is deemed waived").

Officer Gabriel Lopez was on route to the scene in an unmarked police vehicle ten to twenty minutes after the shooting when he "observed a male fitting the description of the suspect fleeing the scene" at "the intersection of Clinton Avenue and W[est] Alpine St[reet]," which is approximately two and one-half blocks from the location of the shooting.[2] Officer Lopez observed the individual, later identified as defendant, "walking westbound on Clinton Avenue at [a] fast pace with his hand in his [waistband] (consistent with a male carrying a handgun) and on the cell phone looking back extremely nervous when he observed a marked patrol unit and heard police sirens."

Officer Lopez "began to follow" defendant and continued observing him. "[E]very time patrol units passed by [defendant, he] bladed his body away from the patrol units and walked faster." Based on his observations, he "believ[ed] that [defendant]" may have been "involved in the shooting" and "alerted all officers of the crime prevention team to stop [defendant] and detain him to further investigate."

Officer Edgardo F. Gonzalez and Sergeant C. Vinueza responded in a marked police vehicle and observed defendant on Clinton Avenue,

---

[2] Officer Lopez is incorrectly identified in the State's brief and the trial court's opinion as Officer Santelises.

approximately five blocks from the scene of the shooting. The officers then exited their vehicle. Sergeant Vinueza identified himself as a police officer and ordered defendant to stop. Defendant "reached underneath his waistband . . . area and removed a black fanny pack . . . and tossed it to the ground." Defendant "then began to flee eastbound on Clinton Avenue." Sergeant Vinueza recovered the fanny pack, which contained a loaded .380 caliber Smith and Wesson handgun containing two hollow nose bullets. Defendant was apprehended after a brief foot pursuit.

Defendant was indicted by an Essex County grand jury and charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2). On June 24, 2020, defendant filed a motion to suppress the handgun, contending the officers did not have a reasonable and articulable suspicion to stop him and, in the alternative, he did not abandon the fanny pack. On February 1, 2023, the court heard oral argument.

On February 2, 2023, the court entered an order denying the motion to suppress supported by a written opinion. It found "there [we]re no material facts in dispute" because the "moving papers, photographs, maps, [and] video

submitted [we]re sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that an evidentiary hearing is not required."[3]

The court found:

> [G]iven the totality of the circumstances presented, police officers had reasonable articulable suspicion to stop the [d]efendant for further investigation as to the shooting that occurred minutes before and a few blocks away from where the [d]efendant was observed.

The court determined "[t]he photographs and video of the incident submitted" confirmed defendant "fit the description of the suspect fleeing the shooting scene" as reported by Officer Lopez when he observed defendant at the intersection of Clinton Avenue and West Alpine Street. The court noted that in the photographs and video "[d]efendant is wearing black pants and a very dark hoodie that appears to be either black or a very dark navy blue."

It continued:

> Given the temporal and geographic proximity to the shooting . . . this alone establishes reasonable articulable suspicion to stop the [d]efendant to further investigate. Notwithstanding, Officer [Lopez] also detailed additional information relied upon, including that the individual was observed "walking westbound on Clinton Avenue at a fast pace with his hand in his [waistband] (consistent with a male carrying a handgun) and on the cell phone looking back extremely nervous when he observed a marked patrol unit and

---

[3] The photographs, maps, and video are not included in the record on appeal.

5

heard police sirens." Officer [Lopez] followed [defendant], undetected, and reported that every time patrol units passed by, the [d]efendant bladed his body away from the patrol units and walked faster.

The court concluded the officers' decision to stop defendant was "entirely reasonable and lawful under the totality of [the] circumstances presented."

On June 29, 2023, defendant pleaded guilty to second-degree unlawful possession of a handgun in exchange for the State's agreement to recommend a sentence of forty-two months in prison with a forty-two month period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), and dismissal of all other charges in Indictment No. 19-10-2757. On September 18, 2023, defendant was sentenced in accordance with the plea agreement. This appeal followed.

On appeal, defendant raises the following points for our consideration.

POINT I

THE GUN[] SHOULD BE SUPPRESSED BECAUSE THE POLICE DID NOT HAVE REASONABLE AND ARTICULABLE SUSPICION TO STOP.

POINT II

DEFENDANT DID NOT ABANDON THE GUN BECAUSE IT WAS DROPPED IN DIRECT RESPONSE TO AN ILLEGAL STOP.

We affirm substantially for the reasons set forth in the court's written opinion. We add the following comments.

Our scope of review of a motion to suppress is limited, and we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)) (citing State v. Robinson, 200 N.J. 1, 15 (2009)). "The suppression motion judge's findings should be overturned 'only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Boone, 232 N.J. 417, 426 (2017) (quoting Elders, 192 N.J. at 244). The legal conclusions and "'the consequences that flow from established facts'" receive no deference and are thus reviewed de novo. Ahmad, 246 N.J. at 609 (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

The Fourth Amendment to the United States Constitution and Art. I § 7 of the New Jersey Constitution protect the right of individuals from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, § 7. "[W]hen [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." United States v. Mendenhall, 446 U.S. 544, 552 (1980) (quoting Terry v. Ohio,

392 U.S. 1, 19 n.16 (1968)). In this case, the State concedes defendant was "seized" when Sergeant Vinueza ordered him to stop.

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)). In Terry, the United States Supreme Court held that a police officer may conduct an investigatory stop of an individual when the officer has reasonable suspicion based on articulable facts that criminal activity may be afoot. 392 U.S. at 30.

"[R]easonable suspicion is neither easily defined nor 'readily, or even usefully, reduced to a neat set of legal rules.'" State v. Stovall, 170 N.J. 346, 356 (2002) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). The reasonable suspicion required to conduct an investigatory stop "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, [but] the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). An investigatory stop must be based on

A-2570-23

more than an "'inchoate and unparticularized suspicion or hunch.'" Stovall, 170 N.J. at 357 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Courts must look to the totality of the circumstances to determine whether reasonable suspicion exists. Id. at 361. To that end, courts can give weight to an "'officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

In State v. Davis, 104 N.J. 490 (1986), our Supreme Court adopted a two-step analysis set forth in United States v. Cortez, 449 U.S. 411 (1981). The Court held:

> A court must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood in those versed in the field of law enforcement." "[A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a court must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [Davis, 104 N.J. at 501 (internal citations omitted).]

We are satisfied the court properly determined the officers had a reasonable and articulable suspicion to conduct an investigatory stop of defendant based on the totality of the circumstances of the case. The court reviewed the photographs and video submitted and concluded the clothing defendant was wearing matched the description provided by witnesses at the scene of the shooting. Additionally, defendant was found in "temporal and geographic proximity to the shooting," "approximately two and a half blocks" away from the scene.

The court also found Officer Lopez's observations of defendant when he was walking on Clinton Avenue further supported the officers' reasonable and articulable suspicion. Specifically, that defendant was walking "at a fast pace with his hand in his [waistband] (consistent with a male carrying a handgun) and on the cell phone looking back extremely nervous when he observed a marked patrol unit and heard police sirens." In addition, "every time patrol units passed by, the [d]efendant bladed his body away from the patrol units and walked faster."

The court's factual findings are amply supported by substantial credible evidence, and the court correctly applied those facts to the law. There is no basis for us to disturb the court's decision to deny defendant's motion to

10

suppress. As a result, we need not address defendant's alternative argument that he did not abandon the gun because it was dropped in response to an illegal stop.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2570-23